### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| EUN KYEONG SEONG, on behalf of himself and all other Plaintiffs similarly situated known and unknown, | ) ) ) ) ) No. 15 C 3761 |
| Plaintiff, | ) ) Magistrate Judge Finnegan ) |
| v. | ) ) |
| THE JOONG-ANG DAILY NEWS, INC. and HYUN KEE KWON, | ) ) ) |
| Defendants. | ) |

## ORDER

In a July 27, 2018 Order [78], Judge Gottschall granted Plaintiff's motion to compel discovery from Defendant The Joong-Ang Daily News, Inc. ("Joong-Ang") described in Production Request No. 9, namely, certain communications between Joong-Ang (in Chicago) and non-party Joon-Ang Media Network USA ("JMNU" in Los Angeles). Judge Gottschall found this discovery to be relevant to the issue of enterprise liability and the small newspaper exemption. She thus required Joong-Ang to respond to Production Request No. 9 but "on the condition that the parties confer, in good faith, and discuss the scope of the documents and files shared." (Doc. 78, at 8).

On September 12, 2018, Plaintiff filed a joint status report stating (in part) that the parties were "working on" narrowing the communications sought in Request No. 9. (Doc. 79 ¶ 2). It also said Plaintiff intended to file a motion by September 20, 2018, seeking leave to amend the complaint to add JMNU as a defendant, and then expected to "wrap up" discovery by October 31, 2018 and file a motion for summary judgment shortly thereafter. (*Id.* ¶¶ 4, 5). On September 17, 2018, Defendant Joong-Ang filed a supplemental status report, complaining that Plaintiff had filed the earlier report without a sufficient meet and confer. New defense counsel for Joong-Ang (Won Kee Lee substituted in on June 25, 2018) said the company "completely ceased its business…in or about early May of 2018" so was having difficulty locating printing logs. (Doc. 80, at 1).[1] The report said Mr. Lee had asked Plaintiff's counsel to "narrow the scope of his request" but had not received a response. (*Id.* at 2). The report also said Joong-Ang would oppose any motion to amend the complaint by naming the parent company (JMNU) since "there are no facts showing any employment relationship with Plaintiff." (*Id.*).

---

[1] The printing logs (sought in Production Request No. 2) have since been located and produced.

On September 18, 2018, the case was referred to this Court for discovery supervision. (Doc. 82). In an order on September 20, 2018, the parties were directed to meet and confer regarding the narrowing of the scope of communications sought in Production Request No. 9 and, if unable to agree, to file a short position statement by October 5, 2015. (Doc. 83). On October 4, 2018, Joong-Ang reported that the parties had conferred and Plaintiff had narrowed the scope of the requested documents to "essentially emails, if any, between Defendant Kwon [the president of Joong-Ang when Plaintiff was employed there] and employees at JMNU during the Claim Period." (Doc. 85, at 3). Joong-Ang further reported that it had produced 23 pages of responsive documents pursuant to that agreement. (*Id.*).

But Plaintiff provided a different report. While agreeing that Request 9 had been narrowed to "all the emails exchanged between [Defendant Kwon] and people who worked in [JMNU]," Plaintiff also said only 6 of the 23 pages were responsive. (Doc. 86, at 1-2). Plaintiff further complained that Joong-Ang's counsel had stated in an email that no other emails existed:

> My client is not in possession or control of any other documents than what are produced herein due to computer hacking in 2012-2013 and its system replacement/update in 2014. Further, all those who may have had any emails with Defendant Hyun Kee Kwon [the president of Joong-Ang when Plaintiff worked there] from 2011 through 2015 are no longer with the company. And my client does not keep any emails for its former employees after 6 months of their resignation or termination.

(*Id*. at 2).

During a status hearing on October 10, 2018, this Court heard argument on this issue (among others) and ordered Defendant Joong-Ang to provide an affidavit with detailed information regarding the reasons for the lack of email, the identity of individuals with personal knowledge of what occurred, and the last known contact information for those individuals. As for Plaintiff, the Court ordered the filing of a supplemental status report describing the emails and/or files sought under Production Request No. 9 based on their content and indicating how this was relevant to enterprise liability. (Doc. 87).

On October 24, 2018, Defendant Joong-Ang filed an affidavit of Young Hwan Kim, the current Chief Financial Officer and Secretary of JMNU. (Doc. 88, at 1-2). He stated that JMNU is the holding company of Defendant Joong-Ang, and Joong-Ang was voluntarily dissolved as of October 2, 2018. (*Id.* at 2). Since 2000, the server for JMNU and Joong-Ang has been located in Seoul, Korea. On or about June 9, 2012, that server was hacked by a then-unknown source, but was "temporarily restored" by August 7, 2012. Thereafter, the Korean government announced that the hacking had been done by North Korea (the affidavit included a link to a newspaper report about this but it is in Korean). (*Id.*). According to Mr. Kim, the server was replaced almost three years later, in March 2015, "[d]ue to the residual side effects of the June 2012 hacking." (*Id.*). Mr. Kim states that "[a]s a result, [JMNU and Joong-Ang] have no emails prior to March 2015. Neither

[JMNU nor Joong-Ang] is in possession of any of their respective emails prior to March 2015." (*Id.* at 2-3). Finally, the affidavit identifies 2 persons in Seoul, Korea (Jung Ki Park and Jae Ho Bang) as individuals with personal knowledge of the hacking and the 2015 server replacement. In addition, current JMNU employee Sang Il Park is identified as someone "with personal knowledge regarding [JMNU and Joong-Ang's] possession of the emails prior and subsequent to the 2015 server replacement." (*Id.* at 3). Plaintiff is understandably suspicious about the timing of the loss of all emails in March 2015 since he ceased working for Joong-Ang on February 28, 2015.

During a hearing on October 31, 2018, Joong-Ang's counsel confirmed that Sang II Park was employed at JMNU both before and after the server was replaced so has personal knowledge that all JMNU emails suddenly became unavailable after the replacement of the server in March 2015. This Court expressed surprise that the content of the old server was not backed up and transferred to the new server in March 2015, and so is requiring the filing of an affidavit from Sang II Park by November 16, 2018.

As for Plaintiff's attempt to comply with the Court's order to describe the emails and documents sought in Production Request No. 9 based on their *content* and the indicia of enterprise liability, he filed a supplemental status report seeking:

> 1. Any communication between Chicago branch and the LA headquarter that deal with Chicago branch personnel;
>
> 2. Any documents exchanged between Chicago branch and the LA headquarter that deal with the headquarters' management of Chicago branch[;]
>
> 3. Any report from Chicago branch submitted to the headquarter including but not limited to capital, funding, advertising, budget, finance, profit and loss of the Chicago branch, and circulation number for Chicago branch[;]
>
> 4. Any performance report of Chicago branch from the headquarter[; and]
>
> 5. Any documents showing evaluation of the Chicago branch by the headquarter.

These requests (particularly 1 through 3) are not only imprecise and clumsily worded but remain overbroad. It is disappointing that counsel did not take more care in crafting the requests after being given multiple opportunities to tailor them to the issue of enterprise liability.

Based on the totality of the circumstances presented here, this Court has determined that Plaintiff may promptly serve a document request on defendant Joong-Ang, and a document subpoena on non-party JMNU, seeking the materials below (whether maintained in electronic form or hard copy) for the years 2014, 2015 and 2016.

3

1) Any reports submitted by officers or employees of Joong-Ang to officers or employees of JMNU regarding Joong-Ang's performance, capital, funding, advertising, budget, finances, profits and losses, or circulation numbers.

2) Any reports generated by officers or employees of JMNU regarding Joong-Ang's performance, capital, funding, advertising, budget, finances, profits and losses, or circulation numbers. This includes any report reflecting an evaluation of Joong-Ang.

3) Any communications between officers or employees of Joong-Ang and officers or employees of JMNU reflecting directives or orders from JMNU to Joong-Ang regarding the management, operation, or personnel of Joong-Ang, or reflecting any decisions made by JMNU regarding the management, operation, or personnel of Joong-Ang.

If the responding entity is able to produce a particular category of the above materials in 2014, then it need not produce that same category of documents in 2016. The Court has included the year 2016 (well after Plaintiff's termination on February 28, 2015) based on the assertion that the responding entities are unable to produce responsive materials in 2014 and early 2015 due to the replacement of a server (located in Seoul, Korea) in March 2015 and the resulting loss of all materials on that server. During the hearing on October 31, 2018, Joong-Ang's counsel said he would accept service of the subpoena on behalf of JMNU. The responsive documents shall be produced by November 30, 2018.[2]

ENTER:

Dated: November 5, 2018

_____
SHEILA FINNEGAN
United States Magistrate Judge

---

[2] While this order was not entered until November 5, 2018, the parties were informed of the ruling during the October 31, 2018 hearing, and were given the precise language for the 3 requests in an email communication the morning of November 2, 2018.